# Exhibit E

# Exhibit E

July 19, 2022

Wendy Olsen
Victims Witness Coordinator
United States Attorneys' Offices

I have read Seth Andrew's Sentencing Memorandum with some care and with considerable indignation. Its purpose, obviously, is to put the best light possible on his history, his criminal behavior, and its effects on others, but the memorandum fails to address some of the very real harm that his criminal acts caused.

I do not dispute that Mr. Andrew has accomplished some remarkable things in his career, but my view of him has been very different. I never met him in person. I first heard of him when it was announced that his Democracy Builders' Fund was purchasing the campus of Marlboro College, in Marlboro, Vermont, from which I had recently retired after forty-seven years of teaching. I attended via Zoom his public meetings with the Marlboro Select Board and the Marlboro School Board, as well as later presentations to the community over Zoom.

My assessment of him was from the first that he was self-assured to the point of arrogance, so accustomed to getting his own way that he felt entitled to dismiss any challenge or question or in his own meetings to establish rules that prevented even asking a question publicly. His "vision" of education is marked by rigidity and technology, so that the names of his various organizations – Democracy Prep, Democracy Builders Fund, Degrees of Freedom – struck me, as they did others, as misrepresentations of what the curricula he was describing might actually do. He seemed to emphasize, for instance, the importance of voting, without encouraging the sort of independent critical thinking that might give people the skill of assessing *how* to vote.

His organization's out-of-the-blue acquisition of the Marlboro College campus had an enormous impact on the legacy of the college as an educational institution. This was partly because he claimed to be sustaining the democratic and citizenship values that characterized Marlboro from its founding without apparently understanding them or believing in them. Perhaps even more important, it was almost immediately apparent that his projected use of the campus was ill-conceived (in fact barely conceived at all), and it was very quickly clear that the finances of DBF were suspect and inadequate to the undertaking, even before the fraudulent source of the DBF funds was revealed.

Many of the points listed below do not address Mr. Andrew's criminal behavior, as he has acknowledged that. I offer these points nonetheless since if the descriptions of past good works and his family values are supposed to weigh in his sentencing, then surely these effects of his character and behavior ought also to weigh in his sentencing.

1. Mr. Andrew told us and the Select Board and School Board of the town, in recorded Zoom meetings, as well as, apparently, the Marlboro College Board of Trustees, that he had no formal association with Democracy Prep after 2013, yet the Federal 990 Tax documents listed him as receiving over $200,000.00/year as Superintendent for at least ttwo years after that.

2. The Democracy Builders's Fund had had its 501 c. 3 status suspended for failure to file the required forms. Any forms on file showed no capacity DBF to purchase and maintain the

campus, let alone undertake the founding of a new educational institution. He refused, publicly, to reveal more recent forms that he claimed had been filed tardily.

3. Some people associated with the College found Mr. Andrew impressive and engaging. A good many others found him disingenuous, ill-informed about the nature of higher education, and arrogant in his dismissal of legitimate questions from those concerned about the future of the campus and its effect on the town.

4. His description of transferring the stolen funds "eventually" into DBF, as if that excused his initial transfer into his own accounts in order to gain a favorable mortgage rate, also ignored the fact that it was on the basis of those fraudulently transferred funds that the Marlboro College Board of Trustees was persuaded to sell the campus to DBF.

5. His various non-profit organizations with inflated names and interlocking board memberships create a deceptive impression of legitimacy and good works, but his descriptions of their function was shifting and unreliable. He seemed to think that in purchasing the campus, he was purchasing also the college's accreditation. He would say on one day that his new school would open in less than a year and then the next day in more than a year. He had one set of "program designers" and then abruptly an entirely different set. Democracy Builders' Fund owned the campus, but Degrees of Freedom would be the "college" responsible for generating the income to maintain the campus, entirely from government subsidies, since it would be tuition-free for students.

6. He soon discovered that the college estimates of what it took to maintain the campus were correct (he stated in a public Zoom meeting that he had assumed that he would be able to cut those expenses dramatically). On the day before the Marlboro Music School's right-of-first-refusal went into force, he entered into a bizarre and irresponsible sale of the campus with unclear obligations on both sides. His public explanations of the deal were evasive and inconsistent. When he felt that the buyer had not met his obligations, he activated a pre-signed Purchase and Sales agreement that the buyer disputed, leaving each side accusing the other of being con-men.

7. The resulting legal confusion and dispute left the Marlboro Music School, with a ninety-nine year lease for summer use of the campus, with no clear idea of to whom its rent was owed or to whom to appeal for the required maintenance of the campus. When Degrees of Freedom collapsed after Mr. Andrew's arrest, which appeared to be as well a betrayal of the staff he had engaged to help design the new program, the Music School had to exercise it's right to purchase the campus, but the expenses involved were increased and complicated by the legal dispute in which Mr. Andrew had immersed the campus.

8. During his tenure as the "inspiring voice" of Degrees of Freedom, Mr. Andrew claimed to want excellent relations with the town, but instead ran roughshod over decades of good relations between the campus and the town, posting campus trails against users and organizing illegal use of a private swimming area for groups that Degrees of Freedom rented facilities to, despite clear explanations of the rules.

9. Mr. Andrew traded on his public reputation for good works to carry out his fraud and his theft. In this Sentencing Memorandum he seeks to trade again upon that same reputation to have his sentence reduced to having to stay home with his family. He argues further that he

has made full restitution of the funds he stole, but he seems unaware of the considerable damage that he caused for the people who trusted him, for the people and the towns with a stake in the success of the new use of the campus, and for the Music School that has ultimately had to bail the campus out of the organizational and financial mess he created.

10. In support of a non-custodial sentence, Mr. Andrew cites his service in the Department of Education and the White House during the Obama administration, yet he seems not to have absorbed that administration's ethical culture, which resulted in no indictments, no trials, and no convictions, a record his own actions slightly tarnish. His theft of Democracy Prep funds did not take place during his role in the administration, but almost every news article I have seen on this case refers to his link to the Department of Education and the Obama White House.

11. In arguing against the elements of the sentencing guidelines based on the financial scale of his offense, Mr. Andrew, and the Court, might consider what would happen to any one of the "neediest" people he has previously chosen to help if one of them were ever to have committed a fraud on one-tenth of the scale that he has. The chances that any one of them would ever be sentenced to a non-custodial sentence seem minuscule.

Sincerely,

T. Hunter Wilson

Marlboro,
Vermont 05301

## Olsen, Wendy (USANYS)

**From:** Barbara Cole <​█████████████​>
**Sent:** Monday, July 18, 2022 4:24 PM
**To:** Olsen, Wendy (USANYS)
**Subject:** [EXTERNAL] 1:22-cr.00032-JPC-1-Andrew,Seth

Dear Wendy Olsen,
Barbara and Bruce Cole, members of the Marlboro Community for over 65 years, were deeply affected by the sale of the Marlboro College campus and its impact on the community orchestrated by Seth Andrew a convicted felon.  We consider Seth Andrew's request a travesty of the justice system if the proper sentence is not imposed upon him: Jail time.
Thank you,
Barbara and Bruce Cole

1