# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue                                                                                                                  Telephone: (212) 390-9550
New York, NY 10110                                                                                                                          www.KKLllp.com

July 26, 2022

By ECF

The Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

                Re:    *United States v. Seth Andrew*, 22 Cr. 32 (JPC)

Dear Judge Cronan:

      As Your Honor knows, we represent Seth Andrew in the above-captioned case. We write in reply to the government's Sentencing Submission to underscore that Seth's actions prove beyond any doubt that he deeply regrets his decisions and has taken full responsibility for his conduct. For these reasons, and for the reasons set forth in the defense's initial Sentencing Submission, we respectfully submit that a sentence of home confinement, followed by three years' probation, is a just result and will satisfy the purposes of sentencing.

    **I.**    ***Seth Was Not Driven By Greed***

      After this prosecution became public, Seth was characterized as having moved the escrow funds principally to obtain a more favorable interest rate on his family's home mortgage. Seth has therefore stood publicly accused of transferring these funds for the primary purpose of enriching himself.

      But as we have sought to explain, and as the government acknowledges, Seth's decision was not driven by greed. *See* Govt. Subm. at 5; *id.* at 6, n.3 ("Andrew did not steal DPPS's money simply to lower his interest rate. That was a collateral benefit."). Moreover, the funds were not necessary for Seth to reach the threshold needed for an interest rate deduction. *Id.* at 6, n.3.[1]

      For his part, Seth has never denied that he sought to obtain an interest rate deduction from Bank-2. To the contrary, Seth has frankly admitted this fact. Def. Subm. at 19. But as the defense explained in our Sentencing Submission, Seth's decision to move the escrow funds was not driven by greed. *Id.* This is not an effort to deflect responsibility. Instead, Seth has

---

[1] As the government points out, on April 18, 2019, Seth's IRA was transferred to Bank-2, which would have made the escrow funds unnecessary in reaching the relevant threshold. Govt. Subm. at 6, n.3. Documents from Bank-2 also demonstrate that Seth's mortgage interest rate was not locked at 2.5% until August 2019. Prior to the issuance of the Final PSR, the defense repeatedly raised with the government the question of whether the escrow funds ultimately entitled Seth to obtain an interest rate deduction. *See* PSR at 31–32.

confronted, and admitted to, the more nuanced and complicated motives behind his decision, none of which are flattering and none of which were justified.

## II. *Seth Was Not Driven By A Desire For Vengeance*

The government now contends that Seth was "chiefly motivated to cause harm" to Democracy Prep Public Schools ("DPPS"). Govt. Subm. at 11. As Seth has acknowledged, his actions were driven in part by ego, frustration with the management of DPPS during a time of uncertainty, as well as a desire to be proven right. Def. Subm. at 19–20. Again, none of these motivations justify Seth's actions. But they are distinct from a desire to harm DPPS.

Indeed, the facts of Seth's life and career belie such an assertion. He has devoted his entire adult life to improving both the education system as a whole and the individual lives of students. There is nothing about Seth's history that suggests he would malevolently and methodically seek to harm such an organization, especially DPPS, and by extension, the students it serves.

Seth admits that, by March 2019, he was frustrated with the leadership of DPPS and the direction in which he perceived the organization was moving. Def. Subm. at 17–18, 20–21. He disagreed with DPPS's management on a number of issues, including the treatment of escrow funds. *Id.* at 18. He was also frustrated that the leadership of DPPS ignored his ideas and proposals. *Id.* This frustration, and Seth's desire to be proven right about the escrow funds, is part of the reason he decided to transfer the funds.

That Seth was motivated in part by a desire to prove himself right, is corroborated by Seth's March 10, 2019 e-mail to DPPS Board Chairman Ryan Offutt. Govt. Ex. B. Of the thousands of e-mails Seth has written in his career, this message does not present Seth at his most tactful. Indeed, it showcases Seth's sometimes aggressive and hard-nosed style. But it also demonstrates that Seth perceived DPPS's challenges to be very urgent. Among the issues he sought to address: "Fix financial controls (*on issues like escrow accounts, that I will demonstrate to you immediately*)." *Id.* at 3 (emphasis added). Seth subsequently made the horrible decision to transfer the escrow funds.

The government wrongly characterizes Seth's admissions about his motive as "inappropriate victim-blaming." Govt. Subm. at 1. A fair reading of the defense's entire memorandum makes abundantly clear that this accusation is misguided. *E.g.*, Def. Subm. at 17 ("Seth does not ask the Court to excuse his conduct because of any of the factors described herein."); *id.* at 21 ("None of these points take away from the fact that Seth is guilty and accepts full responsibility for his conduct. We present this broader context simply to help explain Seth's mindset at the time of the offense."). But to avoid the possibility of any misunderstanding, we reiterate that Seth blames only himself for his conduct. The fact that Seth was frustrated, even angry, at DPPS's leadership for what he perceived to be their mistakes, does not in any way excuse what Seth did. And he has never suggested otherwise. Nevertheless, in order to impose a just sentence, this Court must have as complete and accurate an understanding as possible of Seth's mindset at the time of the conduct. While it may be tempting to label this case in simple

terms, characterizing Seth as a vengeful plotter misses the mark, just as did prior characterizations of the offense as a crime of greed.

### III.  *Democracy Builders Fund Was Not An Ego Project For Seth*

As the government concedes, Seth did not spend any of the transferred funds on goods or services for himself and instead ultimately moved the funds into an account of Democracy Builders Fund, another nonprofit. Govt. Subm. at 5, 13. This is an important mitigating fact that distinguishes this case from the mine-run of wire fraud prosecutions and strongly militates in favor of a non-Guidelines sentence.

The government suggests that by bolstering Democracy Builders Fund's finances, Seth was simply helping himself. *Id.* at 13. To be sure, like every motivated professional, Seth takes pride in his work and accomplishments and those facets of his life are, as with anyone, intertwined with his ego.[2] It is also true that Seth's ego contributed to how he perceived DPPS in March of 2019 and his decision to transfer the escrow funds. Seth wrongfully rationalized that he knew best how to manage the dormant escrow accounts, and this is part of the reason he made the mistake that has led to this moment. Seth makes no excuse for this.

But it would be wrong for this Court to conclude that Seth crassly used Democracy Builders Fund, or any of his professional endeavors, to merely gather accolades, pad his resume, or fuel an ego. The decisions Seth has made throughout his career emphatically prove this is not the case. When Seth founded DPPS and its first charter school (Democracy Prep Charter School) in 2005, it was a venture far more likely to fail than succeed. Seth's commitment to serving the most vulnerable students, rather than advancing those who were more successful, is entirely at odds with someone looking for quick fame and public acclaim. As one of Seth's peers explained:

> Seth and his team would use Census data, find the poorest streets, go knock on the doors, and find the families with the least social capital. In doing so, Seth knew that he and his teachers would be getting kids who'd likely arrive with the most acute academic needs, and therefore it would put great test score pressure on his schools. He shrugged. He wanted to let the chips fall where they may so long as they were giving opportunity to students that others might shy away from.

---

[2] The success of Democracy Builders Fund would of course have been better for Seth's reputation than its failure. But the escrow funds were not necessary for the survival of Democracy Builders Fund. *See* Govt. Subm. at 5. To the extent the Court's sentence should take this intended reputational benefit into account, it also should recognize that Seth's reputation has been utterly destroyed already. No additional punishment is needed on this score.

July 26, 2022
Page 4 of 6

Def. Ex. CC, M. Goldstein Letter.[3]

Seth's goals for Democracy Builders Fund evince a similar commitment to tackling genuine and daunting challenges. Democracy Builders Fund's focus was to be on the 16% of Democracy Prep Charter School alumni who had not yet succeeded at four-year colleges. PSR ¶ 115.

Simply put, if Seth were a person driven to achieve success for its own sake, there were many easier paths he could have taken in his professional life. The evidence is clear that Seth's commitment to Democracy Builders Fund, as with all his professional endeavors, was grounded in strong values and sincere motives. The fact that Seth transferred funds from one educational nonprofit to another educational nonprofit, and spent none of the money on himself, makes this case unique and is a significant mitigating factor.

### IV.   Seth Has Rigorously Confronted His Motives And Accepted Responsibility For His Conduct

It is impossible to overstate how deeply Seth regrets his decision to move these escrow funds. He knows that this was inexcusable conduct that he will have to atone for, and live with, for the rest of his life. Seth does not blame DPPS for his actions. He blames no one but himself and is sorry for the harm that he has caused. The government's suggestion to the contrary is off the mark.

The government points to excerpts from Seth's change of plea hearing as evidence that Seth "has chosen to 'not dwell on th[e] details' of his conduct" and therefore not fully accepted the wrongfulness of his conduct. Govt. Subm. at 1 (quoting 1/14/22, Tr. (Govt. Ex. C) at 35). The government's conclusion is unwarranted. First, Seth clearly stated to the Court that he did not dwell on the details of his conduct, at the time of the transfer. 1/14/22 Tr. (Govt. Ex. C) at 35 ("*At the time*, I did not dwell on those details, your Honor.") (emphasis added). In other words, Seth was trying to explain – not justify – why he had gone through with his actions. He has unsparingly acknowledged his deep regret for his conduct.

Admitting to the Court, his family, and the community that, at the time of the offense, he chose to ignore facts and considerations that he should have taken seriously underscores that Seth has accepted responsibility. There can be no doubt that, if Seth had set aside his frustration with the management of DPPS, considered his conduct more carefully, and thought through its consequences, he would never have moved these funds in the first place.

Since his arrest, Seth has deeply examined the details of his conduct and the reasons behind it. Through that process he has been, by far, his own harshest critic. *See* Def. Subm. at

---

[3] The defense has submitted letters from people who know Seth in a personal or professional capacity and are therefore qualified to address this Court on issues relevant to sentencing, including Seth's history and characteristics. For its part, the government has included two letters written by people whom the government concedes are not victims, Govt. Subm. at 9, who apparently neither know Seth in any meaningful way nor know anything about this case. We respectfully submit that these individuals' opinions are extraneous and irrelevant to the § 3553(a) factors.

26–27; Def. Ex. A, L. Zak Letter ("[T]he man in your courtroom today has been forged into a better version of himself.  More appreciative of his blessings, the person who you now judge is a better man than the one in the complaint. . . . Seth has grown so much in this time period.  Too busy for self-care before, he has slowed down and done challenging personal work. . . . Known for a brutal honesty and bold moves in the past, he has taken time to evaluate his own conduct and learn from it.").

      Second, focusing on, and drawing broad conclusions from a few of Seth's statements at the change of plea hearing, would miss the forest for the trees in a way that is particularly unfair to Seth.  Seth's change of plea on January 14, 2022 was one of the very worst days of his life.  Although such hearings are routine for the Court, its staff, prosecutors, and defense counsel, the same is not true for ordinary citizens.  To Seth, the change of plea hearing signaled the death of the life he had been building for his entire professional career.  It was a terrifying, humiliating, and heartbreaking experience.  To the extent that Seth failed to express himself clearly or eloquently during the hearing, we respectfully ask the Court to consider such missteps in their appropriate context.[4]  The fact remains that Seth entered a guilty plea and expressed his "tremendous remorse for the impact that [his conduct] has had on the schools, the alumni, and [his] own family."  1/14/22 Tr. (Govt. Ex. C) at 33.

      Finally, Seth's conduct is far more compelling evidence that he has accepted responsibility than anything said at the change of plea hearing.  As the government acknowledges, Seth waived indictment, pled guilty without reviewing any discovery, and personally paid the restitution and forfeiture amounts well before he was required to do so.

---

[4] The government also misinterprets a question raised by Seth regarding the identity of the victim. *See* Govt. Subm. at 12.  A reading of the context surrounding Seth's question demonstrates that it was not posed in the manner the government has suggested.  Immediately preceding Seth's comment, the Court explained that:

> There is an agreement to the restitution amount in the plea agreement.  When I receive the presentence investigation report from the probation department, I will be provided information regarding restitution for **victims**.  As with other provisions in the plea agreement, this is an agreement between you and the government.  I'm not saying I will, but in the event that I think a different restitution amount is appropriate, I may potentially order a different restitution amount, but, obviously, if that's the case, I would be hearing from the parties, including your attorney, as to what is proper.  Do you understand that?

1/14/22 Tr. (Govt. Ex. C) at 24–25 (emphasis added).

Seth responded, "I believe I do.  When we're referring to the victim, who are we speaking of?" *Id.* at 25.

      As the Court correctly noted, it is up to the Court to determine the appropriate amounts of restitution for the victims.  Seth, of course, knew that DPPS was a victim and had signed an agreement which he understood obligated him to pay restitution to DPPS.  After hearing that the Court had discretion to determine restitution for the "victims," Seth was confused about whether there were any others who could be entitled to restitution.  After receiving clarification from defense counsel, Seth asked no further questions about this matter.  *Id.* at 26.

July 26, 2022
Page 6 of 6

Govt. Subm. at 8.  Seth has also engaged in a rigorous course of therapy and self-reflection that has required him to dissect, in unsparing fashion, the aspects of his personality that contributed to his decisions.  These actions, rather than any words, are proof positive that Seth has fully accepted responsibility and come to profoundly regret what he has done.

*   *   *

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a).  For reasons set forth here and in the defense's initial Sentencing Submission, we respectfully submit that a prison sentence is a greater punishment than is necessary in this case.  Seth acknowledges the seriousness of the offense, accepts full responsibility, and will continue to do everything in his power to repair the harm he has caused.  We ask the Court to impose a sentence of home confinement followed by three years' probation.

Respectfully submitted,

By: _____

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel.: (212) 390-9550
Edward.Kim@KKLllp.com
Varun.Gumaste@KKLllp.com

DOWNS RACHLIN MARTIN PLLC
199 Main Street
Burlington, VT 05402
Tel.: (802) 863-2375
tdoherty@drm.com

cc:     AUSA Ryan B. Finkel (by ECF)