

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 27, 2022

**BY ECF**
Hon. John P. Cronan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *United States v. Andrew*, 22 Cr. 32 (JPC)

Dear Judge Cronan:

    The Government writes in response the defense's July 26, 2022 letter, which argues that Andrew's serious criminal conduct directed at a nonprofit school system, does not warrant a jail sentence. The defense is wrong.

    *First*, the defense attempts to rebut that Andrew's motive in committing the instant crime was to harm Democracy Prep. It contends that rather than steal DPPS's money to exact revenge he "was motivated by a desire to prove himself right." (Def. Ltr., dated July 26, 2022, ECF No. 45 ("Def. Ltr.") at 2.) That does not make sense. In his initial sentencing submission, the defendant's position was he was "immensely frustrated" because DPPS was "forced" to close one of its schools and, in the defendant's "mind, Democracy Prep was in danger of losing focus on the most vulnerable of its students." (Def. Subm. at 17.) How does Andrew stealing $142,000 on March 10, 2019, and then stealing an additional $75,000 on October 21, 2019, prove him right about DPPS "losing focus on the most vulnerable of its students"? It does not. The defendant was not simply trying to "prove himself right." He was trying to harm Democracy Prep.

    The defendant's attempt to point to his employment demand email, *see* Gov't Subm. Ex B., as corroboration of his "desire to prove himself right" is misguided. (Def. Ltr., at 2.) In his two-page demand email, Andrew devotes one sentence to "fixing financial controls on issues like escrow accounts." (Gov't Subm. Ex B. (alterations omitted).) To be clear, the reason Andrew was able to withdraw the funds from the DPPS escrow accounts is because he was a signatory on the accounts. Only he, and the two or three other signatories, could walk into a bank and walk out with DPPS's money. The financial control that needed fixing was that DPPS should not have trusted Andrew. Further, stealing to highlight "financial controls," does not square with Andrew's actions after the theft. Andrew did not tell DPPS he stole the money, to "prove" to them that their escrow accounts were vulnerable or mismanaged. Far from it. He executed a series of financial transactions to hide his theft, conceal DPPS's money, and convert it to be used by his own entity. Clinging to characterizations that Andrew was "driven in part by ego," "frustration," and/or "a desire to be proven right" is nothing more than an attempt to paper over what is clear—Andrew wanted to hurt DPPS, and he did.

July 27, 2022
Page 2

*Second*, the defense is right that Andrew was not primarily motivated by greed. (Def. Ltr., at 1.) His primary motivation—hurting Democracy Prep—is more egregious. But in addition to hurting the entity that scorned him, the defendant benefited from his crime. He first benefited by propping up Democracy Builders without having to reach deeper into his family's pockets. (*See* Def. Subm. at 19. (Andrew "contributed hundreds of thousands of dollars of his own funds in loans and donations to Democracy Builders").) Further, the defense's assertion that Andrew's commitment to Democracy Builders, "as with all his professional endeavors, was grounded in strong values and sincere motives" is belied by the facts. (Def. Ltr., at 4.) If it were true then, while concerned that DPPS was "losing focus on the most vulnerable of its students" Andrew's offer to Democracy Prep to return as its leader would not have been an exploding demand for substantial compensation. (*See* Govt Subm. Ex. B ("I would be paid $25k/month as salaried employee and basic frugal expenses would be covered. (Note, I will not consider being a consultant under any circumstances). . . . I'll get a $250k bonus in July, 2020 once things are financially stable.").) Indeed, Andrew was plain with DPPS stating "these are my terms as of today . . . . after 24 hours, my monthly salary expectation will go up every day that we're not under a signed contract." (*Id.*) To be sure, Andrew is entitled to be compensated for his work, but if he had nothing but "sincere motives" in all professional endeavors, he would not give a nonprofit 24 hours to agree to his one sided "offer."

*Third*, there is a dissonance between the defense, on the one hand, arguing that Andrew's crime was "driven in part by ego" and, on the other, that spending DPPS's money on Democracy Builders did not benefit Andrew because it was not "an ego project." (Def. Ltr., at 2, 3.) If Andrew's ego was part of his motivation to steal $218,000 from DPPS, because they declined his "offer" to help correct management issues, it is consistent for the Court to conclude that Andrew personally gained, and helped himself, by using DPPS's money to fund Democracy Builders. Indeed, it appears that Andrew ultimately used the stolen money to make a down payment on property purchased from Marlboro College for Democracy Builders. (*See* Govt Subm. at 5, 12.) That transaction, and all of Democracy Builders, focused on Andrew as the organization's leader.[1]

---

[1] *See e.g.*, "A brand new COVID-era college in Vermont?" Boston Globe, May 28, 2020, available at https://www.bostonglobe.com/2020/05/28/metro/brand-new-covid-era-college-vermont/ (this article begins: "Seth Andrew, who founded a network of more than 20 charter schools spread across the country, has been on a strange sort of mission over the past couple of years: to purchase a bucolic yet dying New England college campus and repurpose it as a new sort of educational institution."); "Marlboro College selling Campus to Democracy Builders," Brattleboro Reformer, May 28, 2020 available at https://www.reformer.com/local-news/marlboro-college-selling-campus-to-democracy-builders/article_d53d8fbe-1d7a-5703-b0e0-a4ec8efc01f1.html ("Seth Andrew, founder of Democracy Builders, also founded Democracy Prep, . . . will create a wholly integrated path to a degree for students from hundreds of similar schools across the nation"); "Questions raised about Marlboro College buyer in 11th hour," VTDigger, July 9, 2020, available at https://vtdigger.org/2020/07/09/questions-raised-about-marlboro-college-buyer-in-11th-hour/ ("The founder of Democracy Prep Public Schools, a national charter school network, made a big splash in late May when he announced an ambitious plan to create, from the ashes of Marlboro College, a first-of-its-kind institution of higher education . . . . But with just months to go before the school is supposed to open, it's unclear

July 27, 2022
Page 3

Thus, putting the stolen funds into Democracy Builders personally benefited Andrew, his career, his reputation, and his ego.

*Fourth*, with respect to the mortgage interest rate deduction which Andrew obtained for his $2,000,000 Central Park West apartment, the chronology is instructive. On March 28, 2019, Andrew stole $143,000 of DPPS's money. He deposited approximately half of the stolen funds into Bank-2 the same day. The remaining stolen funds were deposited on April 2, 2019. The next day, Andrew and his mortgage banker spoke via phone for 23 minutes. On April 4, 2019, two days after Andrew stole DPPS's money, Andrew and his wife signed a contract to purchase the Central Park West apartment. At that point, the stolen money was required to put Andrew over the $1,000,000 threshold. Using the stolen money to ensure he met the threshold to obtain the full interest rate deduction was not an accident. This is not undermined by the fact that Andrew later transferred additional money to Bank-2, which obviated the need for the stolen funds to satisfy the threshold, nor that Andrew may have had other money at his disposal. Andrew's primary motive for his crime was punitive but, second, he personally gained by fueling Democracy Builders and, third, he obtained the collateral benefit of ensuring he would save money on his mortgage.

*Fifth*, the defense asserts that its initial submission should not be viewed as victim blaming. In deciding whether it is, the Court should consider how the victim in this case views Andrew's actions since his arrest. Democracy Prep provided the Government its statement after viewing Andrew's conduct at the guilty plea hearing, which Democracy Prep representatives personally witnessed, and after reviewing his sentencing submission. Democracy Prep believes that Andrew's "inability, even after pleading guilty, to take full responsibility for his actions and his attempt to shift blame onto his victim are behaviors and excuses he would not have from even our very youngest scholar." (Govt. Subm. Ex. A.) The Court should credit the victim's view.[2]

\* \* \*

It would be an injustice for the defendant to avoid a jail sentence for his conduct. The defendant is not a benevolent actor who, one occasion, merely erred by misappropriating funds

---

whether Democracy Builders, the nonprofit group helmed by Andrew, has secured regulatory approvals to operate a school in Vermont. Andrew is also facing an anonymous social media campaign claiming to come from former staff and students, who say Democracy Prep Public Schools' practices in other states were racist and abusive."); Govt Subm. Ex. E, at 2 (noting Andrew's public meetings and presentations pitching Marlboro Select Board and the School Board on his plan).

[2] The defense's contention that, during the plea proceeding, Andrew needed to clarify who the "victim" was because the Court stated it will be provided information about "victims" is not persuasive. (Def. Ltr. n.4.) Andrew is well-educated and articulate. If he were confused about the Court's use of the plural term, "victims," he would have asked which "victims" the Court was speaking of. He did not do that. Further, Andrew's commitment not to "dwell" on the details of his misconduct underscores that his plea was not the overwhelming acceptance of responsibility the defense's submissions now contend.

July 27, 2022
Page 4

earmarked for one non-profit and sent them to another.  Andrew made calculated decisions to steal from Democracy Prep—on two different occasions, seven months apart.  Then he tried to cover it up.  He stole because he was angry.  And he benefited from his crime.  Andrew should not avoid the appropriate sentence of incarceration by blaming his ego and contending "a rigorous course of therapy and self-reflection" has caused him "profound[ ] regret."  (Def. Ltr., at 6.)  A sentence without incarceration risks sending a message to others that a professionally successful individual of means can avoid an appropriate penalty for undoubtably serious criminal conduct.

This Court should impose a sentence of incarceration at the low-end of the Stipulated Guidelines Range.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By: /s/_____
     Ryan B. Finkel
     Assistant United States Attorney
     (212) 637-6612