UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                               :
                                                                       :
         -v-                                                           :    22 Cr. 32 (JPC)
                                                                       :
SETH ANDREW,                                                           :    MEMORANDUM OPINION
                                                                       :    AND ORDER
                     Defendant.                                        :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

The United States Probation Office has requested that the Court terminate Defendant Seth Andrew's term of supervised release, which is scheduled to conclude on May 14, 2026. The Court solicited and received submissions from the Government and Defendant with their views on the request. *See* Dkts. 56 ("Govt. Opp."), 57 (Defendant's submission). For reasons that follow, the request is denied without prejudice to renewal at a later point of Defendant's period of supervision.

## I. Background

On March 28, 2019 and October 17, 2019, Defendant made unauthorized withdrawals of approximately $218,000 held in three escrow accounts maintained by his former employer, Democracy Prep Public Schools ("DPPS"), and deposited those funds in newly-created bank accounts under his control. *See* Presentence Investigation Report ("PSR") ¶¶ 28-31, 38-39; Dkt. 30 ("Plea Tr.") at 33:1-11. On January 14, 2022, Defendant pled guilty, pursuant to a plea agreement, to one count of wire fraud in violation of 18 U.S.C. § 1343. Plea Tr. at 37:17-19; Dkt. 49 ("Judgment") at 1. On July 28, 2022, the Court sentenced Defendant to a term of imprisonment of twelve months and one day, followed by a three-year term of supervised release, and imposed a $5,000 fine and a $100 special assessment. Dkt. 51 ("Sentencing Tr.") at 49:1-4, 51:12-20, 51:25-52:6; Judgment at 2-3, 6.

In his plea agreement, Defendant agreed to restitution in the amount of $218,005 and forfeiture in the amount of $22,537.47. PSR ¶¶ 5-6. Defendant satisfied both of those obligations in advance of sentencing, and since has additionally satisfied the other financial obligations of his sentence. *See* Judgment at 6-7; Sent. Tr. at 50:25-51:11; Govt. Opp. at 4.

Defendant began his term of incarceration on September 22, 2022. Govt. Opp. at 3. On December 29, 2022, Defendant was released to a halfway house and the Bureau of Prisons ("BOP") determined that Defendant "was suitable to complete his sentence on home confinement as opposed to a BOP-managed facility." *Id.* Defendant remained on home confinement until commencing his three-year term of supervised release on or around May 16, 2023. *Id.*[1]

On February 21, 2025, the Court received from the Probation Office a request for early termination of Defendant's supervised release. The Probation Office explains that Defendant "has demonstrated having the necessary skill set to continue to be a productive member of society and the ability to lawfully self-manage beyond the period of supervision." The Probation Office indicates that, if the request for early termination of supervised release is denied, it "will request a pre-transfer investigation be conducted by the U.S. Probation Office in the Southern District of Iowa," where Defendant presently resides with his family.

On February 21, 2025, the Court solicited submissions from the parties with their positions on the Probation Office's request. Dkt. 55. On March 7, 2025, the Government filed a letter expressing its opposition to early termination of Defendant's supervision. Dkt. 56. Defendant, proceeding *pro se*, filed a letter dated March 20, 2025, in support of early termination. Dkt. 57.[2]

---

[1] While the Government's submission indicates that Defendant began his term of supervised release on May 16, 2023, Govt. Opp. at 3, the Probation Office informs the Court that Defendant's term of supervised release commenced on May 15, 2023.

[2] Defendant's letter primarily argues that his underlying conviction was contrary to law, contends that his prosecution was politically motivated, and criticizes the actions of one of the federal prosecutors involved in this case. *See* Dkt. 57-2.

## II. Discussion

Pursuant to 18 U.S.C. § 3583(e)(1), "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." But "[e]arly termination is not . . . warranted as a matter of course." *United States v. Rosario*, No. 17 Cr. 27 (LTS), 2023 WL 7305260, at *2 (S.D.N.Y. Nov. 6, 2023) (internal quotation marks omitted). Section 3583(e)(1) allows a district judge to terminate a defendant's supervised release early "to account for new or unforeseen circumstances." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997); *see United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (per curiam) (explaining that "new or changed circumstances relating to the defendant" are not necessarily required to modify conditions of supervised release; "So long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." (citing *Lussier*, 104 F.3d at 36, among other cases)). "Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36.

The Court declines to terminate early Defendant's term of supervised release. The nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), and the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B), counsel against early termination. To start, Defendant committed a serious fraud. As the Court discussed at sentencing, removing funds from

the escrow accounts in question "could have been disastrous for th[e victim] schools and their status in New York State." Sentencing Tr. at 43:15-16. It appears that Defendant took these illegal acts because he was unhappy that DPPS was unwilling to accede to his demands in an employment negotiation. *Id.* at 41:2-16. This "troubling" motive demonstrates that the actions taken were an "intentional and deliberate act" of retribution against the employer. *Id.*

As the Court also remarked at sentencing, this conduct demands "some degree of . . . deterrence." *Id.* at 44:4-5; *see* 18 U.S.C. § 3553(a)(2)(B). As to individual deterrence, although Defendant otherwise has generally led a law-abiding life, his actions cannot be dismissed as an isolated poor decision or a one-off transgression; in fact, he illegally withdrew additional funds six months after he committed the first act of fraud. Sentencing Tr. at 44:6-13. General deterrence also counsels against early termination. As the Court explained, Defendant's sentence was intended to send a message that "those who might be tempted to abuse a position of trust must realize that criminal activity will not be tolerated and will result in appropriate consequences." *Id.* at 44:14-17. "The need for general deterrence is particularly acute in the context of white-collar crime," as persons who commit such crimes "are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed." *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018) (internal quotation marks omitted).

To be sure, the remaining applicable Section 3553(a) factors are, on balance, neutral to the analysis. For example, as explained at sentencing, Defendant's "history and characteristics are strong mitigating factors" and Defendant "has done considerable good for much of his life." Sentencing Tr. at 44:24-25, 45:19-20. Thus, the Court sees minimal need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Nor does the Court consider continued supervised release necessary "to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(D). As the Court recounted at sentencing, Defendant has taken advantage of many opportunities he has received in life, including receiving an excellent education. Sentencing Tr. at 44:25-45:18. And according to the Probation Department, Defendant has secured stable and high-paying employment while on supervision.

Regarding the "kinds of sentence and the sentencing range established for" the offense, the consideration of "pertinent policy statement[s]," and the "need to avoid unwarranted sentencing disparities," 18 U.S.C. § 3353(a)(4)-(6), the Court notes that Defendant's sentence reflected a significant downward variance from his advisory Guidelines range of 21 to 27 months' imprisonment and fine range of $10,000 to $95,000. Sentencing Tr. at 10:19-20. Defendant also has satisfied his restitution obligation and therefore supervised release would not serve "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). But the Court was aware that Defendant had satisfied that obligation at sentencing when it imposed a three-year term of supervised release, after carefully considering the Section 3553(a) factors. Sentencing Tr. at 18:22-24.

Defendant further maintains this his "exceptionally good behavior" while on supervised release warrants early termination. Dkt. 57-2 at 1. While the Court commends Defendant for complying with the conditions of his current supervision and for his overall progress since being released from custody—including by successfully gaining employment, not incurring any new arrests, and satisfying his remaining court-imposed financial obligations—such compliance is expected of one under supervision. *United States v. Wheeler*, No. 20 Cr. 492 (GHW), 2023 WL 4561591, at *1 (S.D.N.Y. July 17, 2023) ("Full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." (internal quotation marks omitted)); *accord, e.g.*, *United States v. Scarpa*, No.

5

18 Cr. 123 (CBA), 2024 WL 1886681, at *1 (E.D.N.Y. Apr. 30, 2024); *Rosario*, 2023 WL 7305260, at *3; *United States v. Auerbach*, No. 19 Cr. 607 (PKC), 2023 WL 4600065, at *1-2 (E.D.N.Y. July 18, 2023). "Compliance with release conditions does not, by itself, provide a basis for early termination of supervised release." *United States v. Guerrero-Fajardo*, No. 23 Cr. 210 (JPC), 2024 WL 3925338, at *2 (S.D.N.Y. Aug. 23, 2024).

Nor is there any reason to conclude that the conditions of Defendant's supervised release have imposed unusual burdens on him or otherwise interfered with his ability to adjust to society. Indeed, the Probation Office reports that Defendant is supervised on its "administrative caseload, where his reporting requirements are minimal, requiring monthly, online reports."

In sum, the nature and circumstances of the offense and the need to afford adequate deterrence to criminal conduct counsel towards denying Defendant's request for early termination, whereas the remaining relevant Section 3553(a) factors neither militate against early termination nor do they suggest that the Court should grant the request. In light of Defendant's circumstances and the Court's evaluation of the applicable Section 3553(a) factors, early termination of supervised release is not warranted.

### III. Conclusion

Accordingly, the Court declines to terminate Defendant Seth Andrew's period of supervised release. This denial is without prejudice to the Probation Office, Defendant, or the Government making another application for early termination in the future if appropriate.

SO ORDERED.

Dated: April 2, 2025
   New York, New York

_____
JOHN P. CRONAN
United States District Judge